# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL A. LEE,<br>　　Petitioner<br><br>　　v.<br><br>E. BRADLEY,<br>　　Respondent | :<br>:<br>:　　No. 1:21-cv-1502<br>:<br>:　　(Judge Rambo)<br>:<br>:<br>: |

## **MEMORANDUM**

On August 31, 2021, *pro se* Petitioner Michael A. Lee ("Petitioner"), who is currently incarcerated at the United States Penitentiary Canaan ("USP Canaan") in Waymart, Pennsylvania, initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging an incident report he received while incarcerated at USP Allenwood in White Deer, Pennsylvania. (Doc. No. 1.) Petitioner paid the requisite filing fee on September 21, 2021. (Doc. No. 6.) In an Order entered September 22, 2021, the Court directed Respondent to show cause why Petitioner should not receive the relief he seeks. (Doc. No. 7.) Respondent filed his response on October 12, 2021. (Doc. No. 9.) Petitioner filed his traverse on October 29, 2021. (Doc. No. 10.) Petitioner's § 2241 petition is, therefore, ripe for disposition.

I.     BACKGROUND

On March 20, 2022, the United States District Court for the Eastern District of North Carolina sentenced Petitioner to serve 360 months' incarceration for conspiracy to distribute cocaine and a consecutive term of sixty (60) months' for carrying a firearm during a drug trafficking offense. (Doc. No. 9-1 at 7-8.) Subsequently, the court reduced Petitioner's sentence on the conspiracy conviction to 202 months' incarceration. (*Id.* at 7.) Petitioner, therefore, is serving an aggregate sentence of 262 months' incarceration. His anticipated release date, with good conduct time ("GCT") factored in, is April 5, 2022. (*Id.* at 6.)

A.     **Facts Regarding Incident Report #3433418**

On September 15, 2020, at approximately 6:30 p.m., the duress alarm in Petitioner's cell was activated. (*Id.* at 11.) When staff arrived at the cell, they observed that Petitioner "had a sheet tied around his neck and attempted to tie it to the air vent above the sink." (*Id.*) Petitioner was ordered to remove the sheet from his neck and ignored the order. (*Id.*) Petitioner continued to tie the sheet to the air vent. (*Id.*) Petitioner was given another order to cease his actions, and he ultimately submitted to hand restraints. (*Id.*) Petitioner was removed from his cell and escorted to Health Services. (*Id.*) Officer Skutnick issued Incident Report #3433418, charging Petitioner with a violation of Code 307, refusing to obey an order, and Code

2

228, tattooing or self-mutilation. (*Id.*) Petitioner received a copy of the Incident Report on September 21, 2021, outside of the twenty-four (24) hour window, because he had been placed on suicide watch. (*Id.* at 11, 13.) At that time, Petitioner was advised of his rights and stated: "I submitted to restraints to Officer Taylor. This is a lie." (*Id.* at 13.)

The Incident Report was forwarded to the Unit Discipline Committee ("UDC") for further action. (*Id.* at 12.) Petitioner appeared before the UDC on September 22, 2020 and provided a written statement. (*Id.*) The UDC advised Petitioner of his rights. (*Id.*) At that time, Petitioner requested that Dr. Williams serve as his staff representative and that inmate Gregory Clark appear as a witness to attest that he never tied the sheet to the air vent. (*Id.* at 15.) The UDC referred the Incident Report to a Disciplinary Hearing Officer ("DHO") for further proceedings. (*Id.* at 12.)

Petitioner appeared before the DHO on October 20, 2020. (*Id.* at 19.) The DHO confirmed that Petitioner understood his rights. (*Id.*) Although Petitioner had requested Dr. Williams as his representative, Dr. Williams was not available and so Dr. Greene appeared as Petitioner's staff representative instead. (*Id.*) Dr. Greene met with Petitioner prior to the DHO hearing. (*Id.*) Petitioner stated, "I did not do anything to myself" and also provided a written statement. (*Id.*) Inmate Gregory

3

Clark refused to appear at the hearing but provided the following statement to Dr. Greene: "He cuffed up when the C.O. asked him and there was no problems at all." (*Id.* at 20.)

The DHO found Petitioner guilty of Code 228A, tattooing or self-mutilating, after considering Petitioner's statements, inmate Clark's statement, the Incident Report, and Petitioner's mental health investigation. (*Id.* at 20-21.) The DHO sanctioned Petitioner with disallowance of twenty-seven (27) days' GCT and loss of commissary and visitation privileges for three (3) months. (*Id.* at 21.) Petitioner received a copy of the DHO report on October 20, 2020. (*Id.*)

### B.   Summary of Petitioner's § 2241 Petition

Petitioner then filed the instant § 2241 petition. (Doc. No. 1.) In his petition, Petitioner argues that his due process rights were violated because the DHO denied him a material witness, changed the offense, and did not consider all evidence. (*Id.* at 6.) According to Petitioner, the DHO refused to call inmate Clark as a witness. (Doc. No. 4 at 1.) Petitioner also avers that the time of the offense as stated in the Incident Report is wrong. (*Id.* at 2.) Moreover, Petitioner alleges that his staff representative, Dr. Greene, did not fulfill his duties because Petitioner gave a request "to get specific information, and do certain things," and those actions weren't taken. (*Id.*) Petitioner also appears to suggest that when the BOP calculated and applied

4

his GCT losses, they improperly applied such losses to his sentence that was already completed. (Doc. No. 1 at 6.) As relief, Petitioner requests that the Court order the BOP to expunge the Incident Report, restore his GCT, and direct the BOP to recalculate his sentence. (*Id.* at 7.)

**II. DISCUSSION**

    **A. Due Process Challenges to Incident Report #3433418**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* at 557. Because Petitioner's sanctions included the loss of good conduct time, he has identified a liberty interest.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the

disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review about the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457. The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 899 F.2d 500, 501-502 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. Under the regulations, an inmate "*ordinarily* receives[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident." *Id.* § 541.5(a) (emphasis added). The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. *Id.* § 541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. *Id.*

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in

7

which case the DHO can conduct the hearing sooner. *Id.* The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. *Id.* After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. *Id.* If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2 of § 541.3. *Id.* Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. *Id.*

### 1. Petitioner Received His Due Process Rights

The record reflects that Petitioner received his procedural due process rights under *Wolff* and the BOP regulations. Petitioner received a copy of the Incident Report on September 21, 2020. (Doc. No. 9-1 at 11.) While this was six (6) days after the incident, the Incident Report was delivered outside the twenty-four (24) hour window due to Petitioner being placed on suicide watch. (*Id.* at 13.) Petitioner fails to show any prejudice that resulted from this delay. *See Bullard v. Scism*, 449

8

F. App'x 232, 235 (3d Cir. 2011). Petitioner appeared before the DHO on October 20, 2020. (Doc. No. 9-1 at 19.) Petitioner received a copy of the DHO's written decision, which included a review of the evidence relied upon and the rationale behind the disciplinary action, on October 20, 2020. (*Id.* at 21.)

Dr. Greene appeared at the hearing as Petitioner's staff representative. (Doc. No. 9-1 at 19.) Petitioner avers that his due process rights were violated because Dr. Greene did not fulfill the duties of a staff representative. (Doc. No. 4 at 2.) He suggests that Dr. Greene did not review video footage and interview inmate Clark. (Doc. No. 1-4 at 1.) However, the record before the Court indicates that Dr. Greene did review the video and spoke to inmate Clark, "who did not provide any information conflicting what the incident report stated." (*Id.*) Moreover, inmate Clark's declaration indicates that he was questioned by Dr. Greene. (Doc. No. 1-3 at 2.) The DHO report also notes that Dr. Greene met with Petitioner prior to the hearing to discuss the matter with him. (Doc. No. 9-1 at 19.) From this evidence, the Court "cannot say that the staff representative failed to perform [his or her] function." *Rodriguez v. Ebbert*, No. 3:15-cv-1952, 2016 WL 6095621, at *6 (M.D. Pa. Oct. 19, 2016); *see also Campbell v. Warden Allenwood USP*, 808 F. App'x 70, 73 (3d Cir. 2020) (rejecting inmate-petitioner's argument that his due process rights were violated because his staff representative was not prepared).

Petitioner also requested that inmate Clark appear at the hearing as a witness on his behalf. He asserts that his due process rights were violated because the DHO never called inmate Clark to appear. (Doc. No. 4 at 1-2.) According to Petitioner, the DHO intentionally did not call inmate Clark "to keep staff misconduct issues off the record." (Doc. No. 1-5 at 5.) He also asserts that BOP policy states that a witness cannot refuse to give a statement. (*Id.*) Petitioner provides the relevant portion of BOP Program Statement 5270.09, *Inmate Discipline Program*, with his traverse. (Doc. No. 10-2.)

Program Statement 5270.09 provides that an "inmate witness can be required to attend, and failure to cooperate with the DHO can result in disciplinary action." (*Id.*) However, the "statement of an inmate requesting a witness is not enough to man date the witness's appearance. There must be an indication that the witness has information directly relevant to the charges." (*Id.*) A prisoner may request that witnesses appear, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. *See* 28 C.F.R. § 541.8(f). Inmates, however, do not have an "unqualified right to call witnesses." *Wolff*, 418 U.S. at 566. Although not necessary, it is "useful for the [DHO] to state its reason for refusing to

call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.*

Here, the DHO noted that inmate Clark refused to appear at the hearing but that Dr. Greene obtained the following statement, "he cuffed up when the C.O asked him and there was no problems at all." (Doc. No. 9-1 at 20.)  Petitioner and inmate Clark now state that the DHO never asked inmate Clark to appear.  (Doc. No. 1-3 at 2; Doc. No. 1-5 at 5.)  Moreover, in his traverse, Petitioner avers that he received an amended DHO report on September 10, 2021, which stated instead that inmate Clark "could not appear due to inmate movement restrictions related to COVID-19." (Doc. No. 10-2 at 2, 4.)  Petitioner avers that the BOP amended the report after he submitted inmate Clark's declaration to the BOP's General Counsel during his appeal of his administrative remedy, and that the BOP "tried to clean up the due process violation with a slick lie." (Doc. No. 10 at 2.)  Nevertheless, the record reflects that inmate Clark provided a statement to Dr. Greene, and that such statement was presented during the DHO hearing.  Given this, the Court does not conclude that inmate Clark's failure to appear at the hearing violated Petitioner's due process rights.  *See Kenney v. Lewisburg*, 640 F. App'x 136, 139 (3d Cir. 2016) (concluding that inmate-petitioner's due process rights were not violated when a requested witness's statement was read during the DHO hearing).

11

Petitioner also alleges that his due process rights were violated because the Incident Report did not reflect the correct time of the offense. (Doc. No. 4 at 2.) Petitioner, however, has provided no evidence suggesting that the incident occurred at a time different than that alleged, and, in any event, even if the time was incorrect, Petitioner has demonstrated no prejudice from this typographical error.

Petitioner also alleges that the DHO violated his due process rights by changing the charged offense to a Code 22A. (Doc. No. 1 at 6.) However, the fact that the Incident Report did not charge Petitioner with a violation of Code 228A is of no consequence. "[P]ursuant to 28 C.F.R. § 541.8(a)(1), a DHO has the authority to find that an inmate 'committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report." *Guerrero v. Recktenwald*, 542 F. App'x 161, 164 (3d Cir. 2013). In the instant case, Incident Report #3433418 charged Petitioner with a violation of Code 228 and detailed how Petitioner had a sheet wrapped around his neck. (Doc. No. 9-1 at 11.) The DHO considered these facts and, therefore, "acted within his authority to conclude that [Petitioner] committed a similar . . . offense t[o] the offense with which he was charged[,] and [Petitioner] received adequate notice of the proceedings against him." *Guerrero*, 542 F. App'x at 164. Thus, the Court finds that Petitioner received all the procedural due process procedures to which he was entitled.

12

### 2.     The DHO Decision Was Based on Sufficient Evidence

With respect to the sufficiency of the evidence, Respondent has included the Incident Report, the DHO report, Petitioner's written statement, and his Psychology Services Institution Disciplinary Process Report.  (Doc. No. 9-1.)  These documents unequivocally establish that there was some evidence supporting the DHO's decision.

The DHO stated the following in his decision finding Petitioner guilty of Code 228A:

> On September 15, 2020 at approximately 6:30 PM [Petitioner] who is housed in Unit 1A cell 114 pressed his duress alarm.  Upon arrival to the cell, [Petitioner] had a sheet tied around his neck and attempted to tie it to the air vent above the sink.  [Petitioner] was ordered to remove the sheet from his neck to which he ignored my commands.  He then continued to tie the sheet to the air vent.  [Petitioner] was given another direct order to cease his actions and submit to hand restraints to which he then complied.  [Petitioner] was then removed from the housing until and escorted to Health Services.
>
> The DHO believed the information provided by the staff member involved in this case, as they derived no known benefit by providing false information.  The DHO finds the charge to be supported in this case based upon the greater weight of evidence cited in this report.  Upon questioning by the DHO, [Petitioner] denied the charge.  He elaborated upon his plea by stating, I did not do anything to myself.  After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence, listed in the paragraphs above, supports the finding [Petitioner] committed the prohibited act(s) of Tattooing or Self-Mutilation, Code(s) 228A, on 09-15-2020, at or about 18:20, in Unit 1A, at USP Allenwood.

(Doc. No. 9-1 at 20-21.)  Moreover, the DHO explained the imposed sanctions, stating:

> [Petitioner's] plan and/or attempt to do bodily harm to himself by hanging/cutting on his body will not be tolerated.  This behavior interferes with the orderly running of the facility and endangers not only the inmate involved, but potentially staff responding to incidents.

(*Id.* at 21.)

Petitioner suggests that because inmate Clark did not appear at the hearing, there was not sufficient evidence to support the charge because inmate Clark's statement would have exonerated him.  (Doc. No. 4 at 2.)  Petitioner has attached a declaration from inmate Clark to his § 2241 petition.  (Doc. No. 1-3.)  In that declaration, inmate Clark states that Petitioner had a sheet wrapped loosely around his neck and was acting as if he was going to tie it to the air vent.  (*Id.* at 1.)  Inmate Clark states that Petitioner never attempted to harm himself.  (*Id.*)  However, he also avers that Petitioner stated that he was going to harm himself.  (*Id.*)

When an inmate challenges the sufficiency of the evidence supporting the DHO's decision, "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence." *Speight v. Minor*, 245 F. App'x 213, 216 (3d Cir. 2007) (quoting *Hill*, 472 U.S. at 455-56).  Even if inmate Clark had appeared and given testimony similar to that which is contained within his declaration, such testimony does not substantially conflict with

the Incident Report. Thus, contrary to Petitioner's suggestion, "some evidence" supports the DHO's conclusion that he was guilty of violating Code 228A. *See Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that a court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause").

Petitioner also suggests that Officer Skutnick issued the Incident Report in retaliation for an incident that occurred two (2) days before, when he allegedly denied Petitioner his religious diet and Petitioner filed a complaint against him. (Doc. No. 1-5 at 5.) This claim is properly raised in Petitioner's § 2241 petition because it relates to the loss of his GCT, which affects the duration of his sentence. *See Queen v. Miner*, 530 F.3d 253, 255 n.2 (3d Cir. 2008). However, the Court's determination that some evidence supports the DHO's decision negates Petitioner's retaliation claim. *See McGee v. Scism*, 463 F. App'x 61, 64 (3d Cir. 2012) (concluding that if a prison disciplinary committee's finding of a violation of prison rules is based on some evidence, that "finding essentially checkmates [a] retaliation claim" (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994))); *Lasko v. Holt*, 334 F. App'x 474, 477 (3d Cir. 2009) (concluding that the inmate-petitioner's retaliation claim must fail because sufficient evidence supported the DHO's determination).

### B. Claim Regarding Sentence Calculation

As noted *supra*, Petitioner also appears to suggest that when the BOP calculated and applied his GCT losses, they improperly applied such losses to his sentence that was already completed. (Doc. No. 1 at 6-7.) Petitioner suggests that the GCT must be disallowed on his consecutive sentence for the firearms charge because it is his only active sentence, thus limiting the amount of GCT available for disallowance. (*Id.*) This argument is identical to one previously raised by Petitioner and rejected by the Court. *See Lee v. Quay*, No. 1:21-cv-952, 2021 WL 4078047, at *3 (M.D. Pa. Sept. 8, 2021). The Court again discerns no error with respect to the BOP's calculation of Petitioner's sentence, and Petitioner is not entitled to habeas relief with respect to this claim.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner was accorded all of his due process rights under *Wolff* and that there was some evidence supporting the decisions made by the DHO. Moreover, the BOP appropriately calculated Petitioner's sentence. Accordingly, Petitioner's § 2241 petition (Doc. No. 1) will be denied. An appropriate Order follows.